Mr. Hirsch, good morning. Good morning. If it pleases the court, David Hirsch representing Mr. Rivera. I think the key in this, I think the most important thing in this case is the statement that Judge Ponsor made at the hearing, the non-evidentiary hearing in this case, that I'm wondering whether I was hasty in concluding that there was probable cause to believe that evidence would be found at the Merwin Street address. What could have caused him to be hasty? I think there's only one possibility. The statement in paragraph 19 of Agent Barron's affidavit saying, Rivera resides at 56 Merwin Street and uses that residence as well as the third floor apartment at 6th Street. The only possible reason for including that otherwise completely extraneous language is to create the impression that this drug dealer is using his home for drug dealing. We have the unusual circumstance here in the Judge Ponsor is the judge who signed off on the warrant. He looks at that paragraph and he's untroubled by it. I mean, he doesn't accept for a moment the notion that he was misled by it, that that in any way contributed to what he characterized as a hasty judgment. So how do we factor in his own repudiation of the argument that you're making that somehow that was decisive in his decision to issue the warrant? Well, two responses to that. One is he was not all that decisive. As I pointed out in the briefs, he made two consecutive and inconsistent statements about it. One saying to defense counsel, well, if you're saying that this was misleading, I have to agree with you. And then immediately afterwards, there was nothing misleading about it. But even if he had been consistent, there still would be grounds for reversal. He wondered if he was over hasty. It is no surprise that the judge remained not cognizant of what caused him to be over hasty because it was done in such a subtle manner. The government says, well, if Barron wanted to be misleading, he could have done it much more directly. No, it wouldn't have worked nearly as well as having him say, to slip in that and also use his phrase. It would have caused question if he was more directly manipulative or deceptive. Here, it slipped by and the judge didn't even notice, this is what caused me to be too hasty in this matter. Mr. Hirsch, what about the cell phone? I mean, we're living in this technological age and it's not like people have landline phones anymore. And this case made me wonder that as long as people are carrying around cell phones that they're using from their home, from their car, from the stash house, then why wouldn't that constitute using and make the affidavit perfectly accurate because transactions were being arranged from a cell phone from the home? A, we're assuming it was from inside the home and there's no basis for that, I think. B, there's... But why isn't it reasonable? People usually have their cell phones on their person and they're on their person when they're in their homes. And also when they're out of their homes. So there's no basis, I think, for concluding that he had been in his home as opposed to near the car somewhere else where the phone came in. In fact, I think if we were to take that reasoning, Your Honor, say I'm on my way into the office where I do all my work. I get a phone call on my cell phone, which I use for office purposes. Mr. Hirsch, I have to see you in 20 minutes. Does that mean I'm not now using my home as a workplace? No. I think you can make exactly the opposite argument of what Your Honor has made regarding cell phones. That they decrease the likelihood that you can consider a place where the phone is used as a workplace. Is there any evidence that he used the apartment house, not his home, I'm talking about the other place, as a place where he kept drugs? I do not recall if there were any drugs found in the workplace. There's no evidence that anything except the transfer of drugs took place in that apartment.  Am I correct? I don't believe there's any evidence in there. So that means that he was stashing his drugs somewhere else? Not necessarily. Well, how would they get there if there was never any drugs there? Well, first of all, we don't know that there were none there. There were none found there. Well, there's no evidence that they were there. Everything is that transfer of drugs took place in that apartment house. As I read the affidavit. On Beaumont Street. Yeah. Yeah. So, therefore, they were being stashed elsewhere. I think that- Where is the question? There are several questions there. One, whether we can be sure that it was, they were not in Beaumont Street. Two, whether we can be sure that he hadn't just, or we can even draw the inference that it was something other than him having just run out of drugs at the Beaumont Street address. Third, we only, as the judge said, we have knowledge that he bent over backwards to separate work from his drug business. And that, I think, is the key. Well, that means that he didn't conduct the actual transfer in his home, which is a normal operation of someone who's doing this as a profession. No, I'd say it's a finding that he didn't use his home at all. Taking plain, I guess, to separate business from home doesn't mean you do some of your business at home. Isn't there, oh, please, go ahead. Well, I also remember that the last place before he went to Beaumont and before the exchange of telephone calls on the cell phone was his home. So, I think, it would seem to me that that would be a fairly good inference that that's where he picked up the drugs to take to the Beaumont department. Well, again, I'm not sure that, I may have misremembered the record, but I'm not sure that he was at home. His car was parked near there. That doesn't necessarily mean he was inside. And again, there is no evidence showing that he was any place other than Beaumont Street. Wasn't he observed leaving his home? Your Honor, I will defer to the court on that. Well, I'll defer to you because it's my recollection, but I could be wrong. But my recollection is that he was seen by police or a confidential before one or two leaving his home before he went to the Beaumont house on that day. I share Judge Troway's recollection. Isn't that the instance where he calls off the party who's supposed to be on the other transaction and says there's a police vehicle in front and that's when they go to the Walgreens parking lot? That was at Beaumont Street. I'm sorry? That was at Beaumont Street. But wasn't he on his way to Beaumont Street from Merwin Street? Not clear. Unclear whether he had already got, since he had already, by the time the police got to Beaumont Street, he was already there. It's unclear whether, it seems unlikely that he was in the car at the time he made the phone call. More likely he was in the Beaumont Street apartment. I still don't understand if the phone is an instrumentality of the crime, why it's not reasonable to assume that the phone could either be found at the stash house, at his home, or on his person. I don't understand. Because that would create such a vast scope of search for the police. Let's see, he was in McDonald's. He does, but the question is, does he? That means he can search McDonald's? I don't think so. He was at the, it is endless, and that would just about eviscerate the Fourth Amendment. So for that reason, I think, that is a scary prospect. But he's making phone calls from his home. Well, my notes are that the police saw the Infiniti leave from the vicinity of the Merwin Street address and did not, the officers did not observe him leave the apartment. So we do not know where he used that phone. Nonetheless, I would stick to my previous argument that to make such an inference would allow the scope of search to be expanded beyond what would be acceptable to anyone and absent  Thank you. Thank you. Ms. Wagoner, good morning. Good morning. May it please the Court, Katherine Wagoner on behalf of the United States. Your Honors, there are two independent grounds on which this Court can affirm the District Court's denial of the motion to suppress. There's the probable cause determination, and the affidavit does support probable cause to believe that evidence of the drug trafficking could be found in the 56 Merwin Street residence. And in any event, the record supports that the good faith exception laid out in Leon applies here. I'm going to start with the latter because that's the ground on which the District Court relied. Well, start with the former. Start with the former? I can do that, Your Honor? Yeah. I'm trying to figure out, I mean, one thing that was troubling to me was what are we and what was the District Court supposed to do with the police affidavit that says, in my career, I have found that people engaged in the business of drug dealing often use their residence to store things. I mean, is that an... I think, Your Honor, that's one fact and one element and factor among many that's laid out in the affidavit. The agent in this case, Agent Barron, had been an agent with the DEA since 1999, so he had more than 12 years, 13 years of experience in pursuing drug offenses. And I think his experience adds to the rest of the facts that he represented in the affidavit that are specific to this case. So you take that information along with what the informant said about Mr. Rivera's long history, the fact that he was using a cell phone to communicate, not just at the time of transaction, but as you see with the Vermont informant, as well as the informant who made the controlled purchase, a number of texts and calls leading up to the transaction. And as Your Honor has noted, and based on the timing of the texts and when the vehicles were where during the controlled purchase, it's evident that he's making some of those calls from his residence. Well, why doesn't that argument lead to the kind of per se rule that the judge worried about? I mean, your argument seems to be that if you are a drug dealer with a long history as a drug dealer, indications that you're dealing with drugs on a large scale, and you use a cell phone, it thereby follows that you must have evidence of that drug activity in your home. Why isn't that, in effect, a per se rule? I think, Your Honor, that first, the government is not seeking a per se rule. Well, you say that, and yet you seem to be urging it. That's what it leads to. Respectfully, I don't think that it does. I think what the affidavit demonstrates is that there are a number of other factors that add to those factors. I think that those factors do demonstrate that Mr. Rivera was a long-term drug dealer. He'd been doing this for over a decade. The volume is important. So, we had transactions of $7,000 of one customer. So, that's for five ounces. In that instance, ten ounces were sold when it consummized $14,000. So, you have a large volume that's actually a lot larger than your normal kind of low level transaction. You also have the vehicles. The vehicles that Mr. Rivera was reported to use during drug dealing by the government. But he's not challenging the search of the stash house. The question that we're grappling with is, is there sufficient evidence in the record that really ties the drug dealing to his home? Yes, and I think those factors that I just mentioned do that. Firstly, the fact that he was using two vehicles, at least, to do drug dealing that had been reported by informants, those vehicles were registered to the 56 Merwin residence. They were registered in his girlfriend's name. This is another attempt to sort of conceal his affiliation and his association with 56 Merwin Street from the authorities. You also have those vehicles in front of 56 Merwin Street, seen there routinely. The agent saw Mr. Rivera using those vehicles parking. He saw Mr. Rivera going in and out of 56 Merwin Street. In fact, Mr. Rivera came out of 56 Merwin Street, got into his Infinity FX that had been reported as used in drug deals by a prior informant to go to the controlled purchase. And so, I think that the record does show that those factors make this not a per se case. You have a lot of context here that's deeper than just he's a long term drug dealer and he resides at 56 Merwin Street. The court doesn't need to find a per se rule in order to find probable cause here. And I think furthermore, the good faith exception, regardless of the probable cause issue, was resting on two explicit factual findings by the district court that the agents did not, there was no evidence of any bad faith whatsoever and the statements were not misleading. And those two factual findings are due to clear error review by this court. And I don't think that the appellant's hyper textual reading of paragraph 19 out of context supports a clear error reversal here. Counsel, you refer to it as a hyper technical reading, but let's just listen to this. This is the second sentence in paragraph 19. It reads, a confidential informant has also informed law enforcement that Rivera resides, there the word resides is used, resides at 56 Merwin Street with his girlfriend and uses, not resides, and uses that residence as well as a third floor apartment at 6 Beaumont Street. Now it's understood that he was using the third floor apartment at 6 Beaumont Street to carry out the transaction, but look at that sentence. And uses that residence, Merwin Street, as well as the third floor apartment at 6 Beaumont Street. The argument seems to be that without explicitly saying so, the government is alleging there, without any basis for doing so, that he was using his residence at 56 Merwin Street and the apartment to transact drugs. Hence the use of the word uses. Isn't the, the government is being a little cute there in trying to distinguish between resides and uses. Uses in the sense of using it to carry out his drug activities. The paragraph 19 is, there's no mention in that entire paragraph of drug dealing and in paragraph 20 which follows, there's no reference to drug dealing with respect to 56 Merwin Street. And so I think that uses there is not referring to drug dealing. It's uses in a sort of literal sense. Is it the most artfully drafted sentence in the affidavit? It certainly isn't, but I don't think, but the wording of paragraph 20 which essentially unpacks that, the sentences in paragraph 19 and gives more specifics regarding the connection between Mr. Rivera and 56 Merwin Street do not mention drug dealing. And so I think that the issue is not whether there's probable cause to believe that drug dealing was occurring at 56 Merwin Street but rather whether evidence of that drug trafficking, which can include proceeds, cell phones, contact lists, all sorts of other things, firearms to protect the proceeds, drugs, and the drug dealer himself, which like a cell phone is something that an individual would carry with him and not leave at a stash house necessarily because it wouldn't provide the protection in all instances. So I think that uses here, while again not the most perfect sentence, is not misleading in any way. It may be ambiguous, but in terms of ambiguity, this court has routinely held that when there's ambiguity that's resolved in favor of the issuing court's probable cause determination. And so I think that in an instance such as this, where we have a sentence that is at worst ambiguous, it's not sufficiently firm determination that a mistake was made with respect to the district court's binding. And indeed, if you excised that statement out of the affidavit, the affidavit would still provide probable cause that evidence of drug dealing would be found at 56 Merwin Street. And on that basis, I think that the good faith exception continues to apply. And in fact, there is no evidence that there was an intent there. There was some sort of reckless misleading in using those words. And in certain cases, this court has found that even when there are misstatements, those statements can be excised and a review of the warrant be conducted in order to determine whether it might stand under LEON without those statements. And if there's nothing further from Your Honors, the government will rest on its feet. Thank you. Thank you.